UNITED STATES DISTRICT COURT                    <u>FOR ONLINE PUBLICATION</u>
EASTERN DISTRICT OF NEW YORK                    <u>ONLY</u>
---------------------------------------------------------------- X
JOHN P. BOHANNON, JR. as Administrator of    :
the estate of KAZIMIERA DOLIK, Deceased,     :
                                             :
                              Plaintiff,      :
                                             :          MEMORANDUM
                                             :          <u>AND ORDER</u>
          - against -                        :
                                             :
ACTION CARTING ENVIRONMENTAL                 :
SERVICES, INC. and CHARLES PATTERSON,        :          06-CV-5689 (JG)
                                             :
                              Defendants.     :
---------------------------------------------------------------- X

A P P E A R A N C E S :

          STRATTON FAXON
               59 Elm Street
               New Haven, CT 06510
          By:  Joel T. Faxon
               Attorneys for Plaintiff

          GALLAGHER, GOSSEEN, FALLER & CROWLEY
               1010 Franklin Avenue -- Suite 400
               Garden City, New York 11530
          By:  Brian P. Morrissey
               Michael J. Crowley
               Attorneys for Defendants

JOHN GLEESON, United States District Judge:

          John Bohannon, Jr., as administrator of the estate of Kazimiera Dolik, brings this

action against Action Carting Environmental Services, Inc. and Charles Patterson, claiming that (1)

Action Carting negligently hired, trained and supervised Patterson; (2) Action Carting is vicariously

liable in respondeat superior for the damages caused by Patterson; and (3) Action Carting and

Patterson acted willfully and with intentional or reckless disregard for the rights of the decedent.

Defendants move for partial summary judgment on the first and third causes of action pursuant to

Fed. R. Civ. P. 56.  For the reasons set forth below, the motion is granted.

## BACKGROUND

The facts of this case, viewed in the light most favorable to Dolik, are as follows. On January 12, 2006, Charles Patterson applied for a job at Action Carting Services, Inc., a sanitation company. Pl.'s Ex. B. When it hires a new driver, Action Carting conducts a review of the applicant's past driving experience. Additionally, Action Carting submits the applicant's medical and license cards to its insurance broker, which informs Action Carting as to whether the license is satisfactory. If it is satisfactory, the applicant is scheduled for a road test administered by Action Carting. Glauda Dep. 16-17. The company has a policy against hiring anybody with a suspended license. *Id.* at 19.

When Action Carting interviewed Patterson, the interviewer did not specifically ask Patterson if he had a valid license or whether his license had ever been suspended. Pl.'s Rule 56.1 Statement ¶ 5; Patterson Dep. 129. However, before hiring Patterson, Action Carting's insurance agents screened Patterson and obtained his Motor Vehicle Report ("MVR"). At the time of his employment application, Patterson had a New Jersey license and a New York license, and both were in good standing.[1] However, his New York license had been suspended several times in the past, with the latest reinstatement occurring on December 13, 2005, just prior to his application to Action Carting. Pl.'s Ex. B. Patterson also had prior moving violations, including police stops for careless driving, stop light violations and car accidents. Pl. Rule 56.1 Statement ¶ 6. Action Carting's insurance company nevertheless approved Patterson as a potential employee, and Action Carting hired him as one of its sanitation truck drivers.

---

[1] In its Rule 56.1 Statement, plaintiff states that at the time of Patterson's hiring in December 2005, and when he started driving for Action Carting, both Patterson's leisure and commercial licenses were suspended. But defendants have provided undisputed documentation that Patterson was not hired for the job until January 12, 2006, at which time his license was in good standing.

Patterson's usual day began at 12:30 AM, and his route took him through New Jersey, the Bronx, Queens, Brooklyn, and finally Manhattan. Patterson Dep. 135-36. Accompanying Patterson on his route was Steven Stroud, a helper who rode on the back passenger side of the truck. Stroud Dep. 16. Action Carting regularly checked the status of Patterson's commercial truck license, the CDL-B, during his employment, including on May 31, 2006 and on September 21, 2006. *See* Def. Ex. G, H. Patterson's driving record reflects that he received a speeding violation on February 9, 2006; that he was involved in an accident on February 12, 2006; and that on July 1, 2006, his license was suspended. On July 26, 2006, his license was reinstated. Pl.'s Ex. B.

On the morning of September 21, 2006, Patterson was driving his sanitation truck down Broadway in Brooklyn, New York. Def. Rule 56.1 Statement ¶ 6. Patterson and Stroud stopped at one of their regular pick-up stops, a McDonald's restaurant. Stroud Dep. 11-12. After collecting the cardboard boxes from McDonald's, Patterson and Stroud encountered a red light, and came to a complete stop two to three feet before the intersection of Broadway and Driggs Street. Def. Rule 56.1 Statement ¶ 6; *see also* Patterson Dep. 38. They remained at the light for about 60 seconds; when the light turned green, Patterson started to move the truck, about five miles per hour through the intersection. Stroud Dep. 18-19. As the truck passed through the intersection, pedestrians began to yell and horns from the cars across the street sounded, prompting Patterson to bring his vehicle to a complete stop. *Id.* at 24-25. Stroud then observed Dolik's body appear behind the truck, with her legs bent under her. *Id.* at 27. Patterson had driven through the intersection after the light had turned green, and he had not seen Dolik as she tried to cross the intersection against the light. Patterson Dep. 83-87. The rear tires

of the sanitation truck had run over her lower extremities, causing severe injuries. Pl.'s Ex. B. She was taken to Bellevue Hospital, where she died several weeks later. *Id.*

Police officers who arrived on the scene determined that Patterson was not at fault for the accident, as Dolik had crossed against the light. Def.'s Ex. L. Although Patterson had three cell phones with him in the truck, Patterson testified that he had not been using his cell phone when his truck came in contact with Dolik. Patterson Dep. 77-80.[2] The police report also reflects that Patterson's cell phone was not in use at the time of the accident. Pl.'s Ex. B. Patterson took a drug test after the accident, and it revealed that he had not been under the influence of any drugs. Def.'s Ex. F.

The MVR report dated September 21, 2006 shows that Patterson's CDL-B license was in good standing as of the date of the accident, but he was arrested after the accident for a license suspension and tickets were issued against the truck. Def.'s Ex. G.; Pl.'s Ex. B. Police Officer Hanson, who inspected the truck, testified that none of the items noted in his inspection contributed to the cause of the accident. Hanson Dep. 34. Indeed, he stated that the tickets issued against the truck did not have anything to do with the safe operation of the vehicle at the time of the accident. *Id.*

## DISCUSSION

A.      *The Summary Judgment Standard of Review*

Under Federal Rule of Civil Procedure 56(c), a moving party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Gallo v. Prudential*

---

[2]      In its 56.1 statement, plaintiff states that at the time of the crash, Patterson had three phones working, and it is unclear whether he was talking on any of them. Plaintiffs do not present any evidence that Patterson was on his cell phone.

*Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir. 1994) ("[T]he burden is on the moving party to demonstrate that no genuine issue respecting any material fact exists." (citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975))). A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (*per curiam*), and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)). Therefore, although a court "should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods. Co.*, 530 U.S. 133, 151 (2000).

However, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is proper when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." *Gallo*, 22 F.3d at 1223-24 (citations omitted).

B.    *Dolik's Claims*

Dolik asserts the defendants are liable for wrongful death and survival damages in the amount of $50,000,000, claiming that (1) Action Carting negligently supervised, employed, maintained and hired Patterson; (2) Action Carting is vicariously liable for the damages caused

by Patterson; and (3) Action Carting and Patterson acted with willful, intentional and/or reckless disregard for the rights of Dolik, thereby supporting a claim for punitive damages. For the reasons set forth below, defendants' motion to dismiss the first and third claims is granted.

New York law provides that when an employee is acting within the scope of his or her employment, the employer is liable for the employee's negligence under the theory of respondeat superior and no claim for negligent hiring, retention, supervision or training may proceed against the employer. *Talavera v. Arbit*, 795 N.Y.S. 2d 738, 738 (2d Dep't 2005); *Watson v. Strack*, 773 N.Y.S.2d 676 (4th Dep't 2004); *Weinberg v. Guttman Breast & Diagnostic Inst.*, 679 N.Y.S.2d 127 (1st Dep't 1998). However, "an exception exists to this general principle where the injured plaintiff is seeking punitive damages from the employer based on alleged gross negligence in the hiring or retention of the employee." *Watson v. Strack*, 773 N.Y.S.2d at 676; *see also Karoon v. N.Y. City Tr. Auth.*, 659 N.Y.S.2d 27 (1st Dep't 1997) (stating the gross negligence exception and finding it inapplicable); *Coville v. Ryder Truck Rental*, 817 N.Y.S.2d 179, 180 (3d Dep't 2006) (same).

To support a claim of gross negligence, the defendant's conduct must be "so outrageous as to evince a high degree of moral turpitude . . . [so] as to imply a criminal indifference to civil obligations." *Henderson v. UPS*, 675 N.Y.S.2d 715 (3d Dep't 1998) (quoting *Zarin v. Reid & Priest*, 585 N.Y.S.2d 379 (1st Dep't 1992)). An imposition of punitive damages requires "conduct that evidences a high degree of moral culpability, is so flagrant as to transcend simple carelessness, or constitutes willful or wanton negligence or recklessness so as to evince a conscious disregard for the rights of others." *Coville*, 817 N.Y.S.2d at 180 (quoting *Evans v. Stranger*, 762 N.Y.S.2d 678 (3d Dep't 2003)).

Here, the defendants concede that Patterson was acting in the scope of his employment when he injured Dolik. Unless plaintiffs can show that Action Carting acted with gross negligence in hiring or retaining Patterson, Dolik's first and third claims must be dismissed under controlling New York law.

Dolik asserts that Action Carting's decision to hire Patterson evinced willful or wanton negligence because his driving record was replete with traffic violations, accidents, and suspensions. Furthermore, Patterson's record reveals that while he was employed with Action Carting, Patterson committed several traffic violations, and his license was even suspended from July 1, 2006 to July 26, 2006. Additionally, Dolik argues that on the date of the accident, Patterson was still driving with a suspended license for which he was then arrested. A comparison of these facts to those in similar cases demonstrates that Action Carting did not act with a high degree of moral culpability, or with conscious disregard for the rights of others, when it hired, retained and supervised Patterson.

In *Watson v. Strack*, 773 N.Y.S. 2d 676 (4th Dep't 2004), for example, the plaintiff claimed that the defendant employer was grossly negligent in hiring its driver-employee because it failed to conduct an investigation into the employee's driving record before hiring him and failed to monitor his driving record while he was employed by the company. As in this case, the employee in *Watson* had a marred driving record and a pending driving charge at the time of the accident. The court in *Watson* nevertheless found as a matter of law that the failure of the employer to conduct an investigation into the driving record of the employee before hiring him or to monitor the employee's driving record during employment "[did] not constitute the requisite conduct for the imposition of punitive damages." *Watson*, 773 N.Y.S.2d at 677.

The facts here are less favorable to the plaintiff.   Action Carting conducted a full investigation of Patterson's driving past and monitored him while he was employed.  Even though Patterson had suspensions on his record, upon hiring and during his employment, the requested MVR's demonstrated that Patterson's license was in good standing.

*Marcoux v. Farm Service and Supplies, Inc.*, 283 F. Supp. 2d 901 (S.D.N.Y. 2003), also illustrates Dolik's failure to show facts from which a jury could find gross negligence on the part of Action Carting.  The plaintiffs in *Marcoux* argued that the defendant employer acted with gross negligence when it continued to employ a driver whose record showed "disregard for public safety and applicable rules and regulations."  *Id.* at 909.   After an extensive review of what is required to properly assert a claim for gross negligence, the court observed "how high the punitive damages threshold is." *Id*. at 911.  Indeed, in New York, not even evidence that a defendant was driving while intoxicated would justify the imposition of punitive damages. *Id.*; *see also Parkhill v. Celarly*, 759 N.Y.S. 2d 262 (4th Dep't 2003); *Wanke v. Lynn's Transp*. 836 F. Supp. 587 (N.D. Ind. 1993) (evidence insufficient to demonstrate gross negligence required for negligent hiring claim even though defendant trucking company had (1) failed to inquire about the driver's record containing multiple suspensions; (2) falsely certified to the Department of Transportation that the driver had taken a driving test and had even helped the driver cheat on the required written test; and (3) cancelled the driver's drug test immediately after the accident).

Viewed in this context, Dolik's allegations clearly do not meet the threshold for a claim of gross negligence.  Accordingly, plaintiff's claims for negligent hiring, supervision and retention and for punitive damages are dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion for partial summary judgment is granted. Jury selection and trial on the remaining claim shall occur on Monday, August 4, 2008 at 9:30 AM.

So ordered.


John Gleeson, U.S.D.J.



Dated:  May 20, 2008
        Brooklyn, New York